## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

      Plaintiff,

v.

      Case No. 16-20016-07-DDC

ANGEL LANDA-AREVALO (07),

      Defendant.

## MEMORANDUM AND ORDER DECIDING DEFENDANT'S COMPETENCE FOR PROCEEDINGS TO CONTINUE

Counsel for defendant Angel Landa-Arevalo filed a motion requesting a psychiatric or psychological examination of his client, a psychiatric or psychological report, and a hearing to determine his client's competency. *See* Doc. 463. In this motion, defense counsel asserted he had "reasonable cause to believe that Mr. Landa-Arevalo may presently be suffering from a mental disease or defect rendering him mentally incompetent[.]" *Id.* at 3. Counsel for the government filed a response joining the motion to determine defendant's competency. *See* Doc. 469. The court found that sufficient cause existed to believe that Mr. Landa-Arevalo might suffer a mental disease or defect rending him incompetent. *See* Doc. 471 at 1–2. It thus granted defense counsel's motion (Doc. 463). *See* Doc. 471.

After transport, defendant arrived for evaluation at the Bureau of Prisons Metropolitan Correctional Center in San Diego, California on January 25, 2021. Doc. 480 at 2. Dr. Alicia Gilbert of the Bureau of Prisons submitted her evaluation report on March 16, 2021. *Id.* at 1; Doc. 502 at 10. On defense counsel's request, the court scheduled and conducted a competency hearing. When this hearing concluded, the court invited both parties to submit post-hearing briefs addressing the evidence about defendant's competency and attendant legal issues. *See*

Doc. 502 at 45–46.  Both parties accepted the court's invitation, filing post-hearing briefs.  *See* Docs. 505 & 506.

This Order now decides whether Mr. Landa-Arevalo is competent for his legal proceedings to continue.  Below, in the first two sections, the court addresses the substantive legal standard governing competency determinations (Section I) and the burden of proof (Section II).  A third section—Section III—applies those standards to the evidence adduced at the competency hearing.  For reasons this Order explains, the court concludes that Mr. Landa-Arevalo is competent for proceedings to continue against him.

## I.      SUBSTANTIVE STANDARD

The parties largely agree about the substantive standard governing the competency question.  The Fifth Amendment's Due Process Clause requires a criminal defendant to be mentally competent for proceedings to continue.  *Drope v. Missouri*, 420 U.S. 162, 171–72 (1975).  This requirement means the court must decide whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding[,]" and whether he "has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (internal quotation marks omitted); *United States v. Boigegrain*, 155 F.3d 1181, 1189 (10th Cir. 1998) (quoting *Dusky*, 362 U.S. at 402).

Congress has adopted a similar statutory standard in 18 U.S.C. § 4241(d).  It provides, "If, after the [competency] hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist in his defense, the court shall commit the defendant to the custody of the Attorney General."  18 U.S.C. § 4241(d).  If a defendant fails to meet this

standard, the statute mandates the Attorney General to hospitalize the defendant in a suitable

treatment facility.  *Id*.  Absent such a finding, however, the case against the defendant continues.

Importantly, the statute directs courts to decide a defendant's competency "[a]t any time after the

commencement of a prosecution for an offense and prior to the sentencing of the defendant"

when "there is reasonable cause to believe" that the defendant is mentally incompetent.  18

U.S.C. § 4241(a).

## II.     BURDEN OF PROOF

### A.  What standard applies?

Congress adopted the preponderance of the evidence standard for determining a

defendant's competency.  18 U.S.C. § 4241(d).  This preponderance standard is well known.  A

party proves a fact by a preponderance of the evidence when it shows that "the fact sought to be

proved is more probable than not."  3 Kevin F. O'Malley, Jay E. Grenig & William C. Lee,

*Federal Jury Practice and Instructions Civil* § 104.01 (Thomson Reuters ed., 6th ed. 2011);

*United States v. Vaccaro*, No. 93-6023, 5 F.3d 548, 1993 WL 371420, at *2 (10th Cir. Sept. 23,

1993) (describing the standard as "the evidence as a whole shows the fact sought to be proved is

more probable than not").

To sustain the burden imposed by the preponderance standard, the party charged with the

burden of proof must present evidence that, "when considered and compared with the evidence

opposed to it, has more convincing force" that thus leads the factfinder to believe "that what is

sought to be proved is more likely true than not true."  O'Malley, Grenig & Lee, *supra*, at §

104.01.  In short, the factfinder must "'believe that the existence of a fact is more probable than

its nonexistence[.]'"  *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S.

Cal.*, 508 U.S. 602, 622 (1993) (quoting *In re Winship*, 397 U.S. 358, 371–72 (1970) (Harlan, J.,

concurring)); *Nutraceutical Corp. v. Von Eschenbach*, 459 F.3d 1033, 1040 (10th Cir. 2006) (reciting that "the preponderance of the evidence standard 'simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence'" (quoting *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137–38 n.9 (1997))); *United States v. Bellamy*, 925 F.3d 1180, 1185–86 (2019) (explaining that a party "must show that 'the existence of a fact is more probable than its nonexistence'" (quoting *Concrete Pipe*, 508 U.S. at 622)).

The preponderance standard does not require the party bearing that burden to capture 51 percent of the quantity of evidence, or even 50.1 percent of it.  This is so because the factfinder need not weigh the "quantity of evidence."  *In re Winship*, 397 U.S. at 371 n.3 (Harlan, J., concurring).  Instead, the "ultimate measure" of conflicting evidence is "quality and not quantity."  *Weiler v. United States*, 323 U.S. 606, 608 (1945).  A party satisfies this burden "if the factfinder believes by the thinnest conceivable margin that the points to be proved are so[.]" 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 3:5 (Thomson Reuters ed., 4th ed. 2013).

## B.  Who bears the burden on the competency question?

Here, the parties agree that the preponderance of evidence standard controls the competency issue.[1]  They disagree, though, about who must bear that burden.  Defendant asserts that the government bears the burden.  Doc. 506 at 9 (Defendant's Post-Hearing Brief Concerning Mental Competency of the Defendant).  The government asserts that defendant bears the burden.  Doc. 505 at 3 (Government's Post-Competency Hearing Brief).  In two separate

---

[1]      *See* Doc. 463 (Defendant's Motion for Hearing to Determine Mental Competency of the Defendant) at 2 (explaining that the court finds competency "by a preponderance of evidence" (citing 18 U.S.C. § 4241(d))) & Doc. 505 (Government's Post-Competency Hearing Brief) at 1 ("The court must determine by a preponderance of the evidence whether the defendant is incompetent or competent.").

cases, the Supreme Court has hinted that the defendant bears the burden to establish incompetency.

*First*, in *Medina v. California*, the Court held that a state law presuming defendant's competency to stand trial and imposing the burden to prove otherwise on the party asserting incompetence did not violate due process.  505 U.S. 437, 446, 453 (1992).  The court explained: "Once a State provides a defendant access to procedures for making a competency evaluation," there is "no basis for holding that due process further requires the State to assume the burden of vindicating the defendant's constitutional right by persuading the trier of fact that the defendant is competent to stand trial." *Id*. at 449.  The Court explained that states satisfy the Due Process Clause if they provide the defendant "a reasonable opportunity to demonstrate that he is not competent to stand trial." *Id*. at 451.

*Second*, in *Cooper v. Oklahoma*, the Court held that a state law imposing on the defendant the burden of proving incompetence by clear and convincing evidence violated due process.  517 U.S. 348, 356 (1996).  The Court reasoned that the state law allowed the state to proceed against a defendant even "after the defendant has demonstrated that he is more likely than not incompetent." *Id*. at 355.  But, the Court confirmed the view expressed four years earlier in *Medina*, *i.e.*, that a state "may presume that the defendant is competent and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence." *Id*. (citing *Medina*, 505 U.S. at 449).  Also, *Cooper* noted that "the difficulty of ascertaining where the truth lies may make it appropriate to place the burden of proof on the proponent of an issue[.]" *Id*. at 366.

Our Circuit's precedent mirrors the Supreme Court's view expressed in *Medina* and *Cooper*.  Generally, cases reviewing competency determinations fall into two categories.  Cases

in the first category arise from petitions filed under 18 U.S.C. 2254, other habeas corpus petitions, or other collateral attacks of state court convictions. These cases turn on constitutional considerations. The second category consists of cases reviewing decisions applying the federal statute governing competency decisions. Sometimes, these cases also present a Constitutional question.

The current controversy is more like the cases in this second category of the Tenth Circuit cases. And so, the court's analysis focuses on them.

In *United States v. Smith*, the Circuit held that the defendant in a federal criminal proceeding "failed to sustain his burden of proving his incompetency." 521 F.2d 374, 377 (10th Cir. 1975). Citing the competency standard from *Dusky*, the court of appeals explained that this standard "raises issues of fact as to which the defendant has the burden of proof." *Id*. (citing *Johnston v. United States*, 292 F.2d 51, 53 (10th Cir. 1961)). *Smith*'s defendant argued that he was unable to assist in his defense because he was under the influence of Valium during trial. *Id*. The Circuit affirmed the trial court's ruling that the defendant had failed to meet his burden. *Id*.

Later, in *United States v. Montoya*, our Circuit held that the district court hadn't erred when it found the defendant in a federal criminal proceeding competent to stand trial. No. 95-8052, 85 F.3d 641, 1996 WL 229188, *3 (10th Cir. May 7, 1996) (unpublished). Citing the Supreme Court, the Circuit noted that the "burden is on the defendant to prove incompetence by a preponderance of the evidence." *Id*. at *2 (citing *Cooper*, 517 U.S. at 361). In *Montoya*, the Federal Medical Center had diagnosed the defendant with "language and personality disorders" and "the effects of drug abuse." *Id*. at *1. The defendant argued that he was incompetent because he took advice from spirits, talked to an imaginary friend as a child, and conducted secret missions for the government as an adult. *Id*. at *2, *3. But, expert testimony suggested

that the defendant acted out of anger and a desire for public attention rather than mental incompetence. *Id*. at *2. The Tenth Circuit affirmed the district court's finding that the defendant was competent to stand trial. *Id*. at *3.

*United States v. Sanchez-Gonzalez* is similar. 109 F. App'x 287, 288 (10th Cir. 2004). There, the Tenth Circuit held that the "district court used the correct standard" and "did not clearly err" when it found the defendant competent to stand trial on his federal criminal charge. *Id.* at 288. In so doing, the court of appeals explained that "the Government may presume the defendant is competent and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence." *Id*. at 290 (first citing *Cooper*, 517 U.S. at 355; then citing 18 U.S.C. 4241(d)). Initially the district court found the defendant incompetent, ordered him committed for treatment, but later found him competent. *Id*. at 289. The Tenth Circuit affirmed this finding, holding the district court did not clearly err by imposing the burden to prove incompetency by a preponderance of the evidence on the defendant.

In *United States v. Wayt*, the Tenth Circuit also held that the district court in a federal criminal proceeding had not clearly erred by imposing the burden on the defendant. 24 F. App'x 880, 881 (10th Cir. 2001). Noting that 18 U.S.C. 4241 "does not allocate the burden of proof," the Circuit held the "allocation of the burden of proof did not affect the outcome of [the district court's] competency determination." *Id*. at 883 (first citing *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995); then citing 18 U.S.C. §§ 4241, 4247). The defendant argued that a personality disorder resulting from long term substance abuse combined with a head injury rendered him "unable to understand the proceedings against him or to assist counsel in his case." *Id*. at 881. The Circuit found the evidence in the case was "not in equipoise[,]" *id.* at 883, stating the "presence of some degree of mental disorder does not necessarily mean the defendant is

incompetent to assist in his own defense[,]" *id.* at 882 n.2 (citing *United States v. Mackovich*, 209 F.3d 1227, 1233 (10th Cir.), *cert. denied*, 531 U.S. 905 (2000)).  While the Circuit declined to reach the burden issue explicitly, it held that imposing the burden on the defendant was not error where a preponderance of the evidence supported a finding he was competent.  *Id.* at 883.

Both this court and other district courts in our Circuit have held defendants bear the burden.  *E.g.*, *United States v. Dennis*, No. 11-10250-EFM, 2012 WL 4794593, at *3 (D. Kan. Oct. 9, 2012) (holding defendant failed to meet his burden of proving incompetence by a preponderance of the evidence); *United States v. Bitton*, No. 2:05-cr-661 CW, 2010 WL 1929617, at *6, *9 (D. Utah May 13, 2010) (finding defendant had met his burden to "prove by a preponderance of the evidence that he is incompetent to stand trial").

In other district court cases from our Circuit, courts have declined to reach the question where the allocation of the burden did not affect the outcome.  *E.g.*, *United States v. Bauman*, No. 07-20052-KHV, 2008 WL 2560706, at *6 n.7, *8 (D. Kan. June 26, 2008) (finding defendant was incompetent to stand trial "regardless [of] which party bears the burden of proof"); *United States v. Kenney*, No. 09-20022-04-KHV, 2009 WL 10695106, at *2 n.9, *3 (D. Kan. Aug. 21, 2009) (concluding that "defendant should be found competent regardless of which party bears the burden of proof"); *United States v. Haga*, 740 F. Supp. 1493, 1500–01 (D. Colo. 1990) (holding an undiagnosed medical condition did not render defendant incompetent without supporting medical evidence).[2]

---

[2]    The court realizes that the Circuits have reached competing conclusions about who bears the burden to prove a defendant's competency.  Some have imposed the burden on the government.  *E.g.*, *Brown v. Warden*, 682 F.2d 348, 353–54 (2d Cir. 1982); *United States v. DiGilio*, 538 F.2d 972, 987 (3d Cir. 1976*); United States v. Velasquez*, 885 F.2d 1076, 1089 (3d Cir. 1989); *United States v. Makris*, 535 F.2d 899, 906 (5th Cir. 1976); *United States v. Hutson*, 821 F.2d 1015, 1018 (5th Cir. 1987); *United States v. Teague*, 956 F.2d 1427, 1431 (7th Cir. 1992); *United States v. Hoskie*, 950 F.2d 1388, 1392 (9th Cir. 1991).  The Fourth Circuit, in contrast, imposes the burden on the defendant to prove he is not competent.  *United States v. Robinson*, 404 F.3d 850, 856 (4th Cir. 2005).

While the court is persuaded that the balance of authority in our Circuit favors the conclusion that the defendant bears the burden to prove incompetence, the court need not decide that narrow question to decide the question in this case. That's so because the government, if it bears the burden, has carried it. And if the defendant bears the burden to establish he's not competent, he has failed to shoulder it.

To be sure, the evidence about Mr. Landa-Arevalo's competency is more limited than it often is. But this limited set of evidence is a situation of the defendant's making for, as explained below, he decided to curtail his participation in the examination process. His decision limited the government's ability to adduce evidence that might have illuminated the answer more brightly. But, defendant's intransigence did not stop the government from accumulating enough quality evidence to establish that it is more probable that Mr. Landa-Arevalo is competent than he is incompetent. This finding is all the preponderance standard requires. The next section explains the reasons for this finding.

## III.    IS MR. LANDA-AREVALO COMPETENT FOR PROCEEDINGS TO CONTINUE?

As explained at the outset, a defendant is competent when he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and when "he has a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402 (internal quotation marks omitted). So, the court assesses the available evidence to discern whether Mr. Landa-Arevalo possesses the ability "to consult with counsel" and "assist in preparing his defense[.]" *Drope*, 420 U.S. at 171.

Dr. Alicia Gilbert of the Bureau of Prisons evaluated Mr. Landa-Arevalo at the Metropolitan Correctional Center in San Diego on February 17, February 19, March 4, and March 8, 2021. Doc. 502 at 8, 10 & Doc. 480 at 1–2. Dr. Gilbert holds a Ph.D. in clinical

psychology and is licensed to practice psychology in the state of California.  Doc. 502 at 8–9.

Dr. Gilbert filed a report with her findings dated March 16, 2021.  *Id*. at 10.

Dr. Gilbert reported that she "weighed out the . . . different pieces of evidence" and

concluded that "the evidence suggesting that [Mr. Landa-Arevalo] was competent outweighed

the evidence suggesting that he wasn't."  *Id*. at 16.  But, Dr. Gilbert, concedes she was "unable to

fully assess" Mr. Landa-Arevalo, Doc. 480 at 9, because he refused to answer the entire

"Validity Indicator Profile[,]" *id.* at 7.  As a result, that "test was not scored."  *Id*. at 7.  Similarly,

Mr. Landa-Arevalo "refused to participate" in the "Revised Competency Assessment

Instrument."  *Id*. at 8.  Nonetheless, Dr. Gilbert testified that she could diagnose mental illness

"based solely on interviews" and without performing testing.  Doc. 502 at 22.  She testified to

her opinion that it is possible to acquire "enough information" without testing, explaining that

"testing is not good for everybody."  *Id*.

Here, in addition to testing, Dr. Gilbert reviewed Mr. Landa-Arevalo's phone calls, his

electronic correspondence, and his medical records.  Dr. Gilbert reported that the phone calls

offered "no evidence of disordered thought processes, delusional beliefs, or any other symptoms

associated with severe mental illness."  Doc. 480 at 3.  Similarly, the electronic correspondence

lacked "evidence of disordered thought process or difficulties with written expression."  *Id*.

After reviewing medical records, Dr. Gilbert reported that Mr. Landa-Arevalo sustained a head

injury in a car accident in 2013, but he insisted that he "has no lasting issues as a result."  *Id*. at 5.

Dr. Gilbert testified that she found little evidence of mental incompetence during the

evaluation in which Mr. Landa-Arevalo participated adequately, even if not fully.  Dr. Gilbert

reported that Mr. Landa-Arevalo was "polite," "respectful," "mostly cooperative," "assertive,"

and "unafraid to ask questions" during the evaluation.  *Id*. at 6.  Also, Dr. Gilbert reported that he

"followed the rules" and "actively participated" in conversations. *Id*. Dr. Gilbert found "no evidence of thought blocking or incoherent communications which is inconsistent with a psychotic disorder or significant cognitive impairment." *Id*. at 5. Mr. Landa-Arevalo "denied experiencing auditory and visual hallucinations" and presented "no evidence of delusional thinking or paranoia." *Id*. Dr. Gilbert reported that Mr. Landa-Arevalo appeared "to be functioning relatively well with no noticeable deficits." *Id*. at 6. Also, Dr. Gilbert concluded that Mr. Landa-Arevalo "demonstrated logical thinking as well as good memory[.]" *Id*. Dr. Gilbert considered these pieces of evidence and concluded that they favored a finding that Mr. Landa-Arevalo is competent.

Dr. Gilbert acknowledged that there was a "possibility that his perception of events or situations may be askew[.]" *Id*. But, Dr. Gilbert concluded that Mr. Landa-Arevalo's mental health issues are temporary, will resolve once his case resolves, and reported her opinion that his issues "are only related to his legal situation and his belief that he has been unfairly prosecuted." *Id*. at 8. Although Mr. Landa-Arevalo's medical summary showed an "Adjustment Disorder" diagnosis, *id.* at 4, he did not request or require "any contact with Psychology Services" beyond "the court-ordered evaluation," *id*. at 3. Dr. Gilbert also reported that Adjustment Disorder is "typically an acute stress disorder," which in "most cases" is diagnosed "on a short-term basis[.]" *Id*. at 7. She reported it's "often the result of the environment or situation," and that Mr. Landa-Arevalo's "legal situation and prison environment" hinder his recovery from the disorder. *Id*. Additionally, Dr. Gilbert reported that Mr. Landa-Arevalo appeared to have some traits associated with "Obsessive-Compulsive Personality Disorder," but that such disorder is "not typically considered a severe mental illness[.]" *Id*. So, Dr. Gilbert reported that Mr. Landa-Arevalo is "most likely extremely anxious about his current situation." *Id*. "Once his legal

situation" resolves, "most of his anxiety and difficulty working with others will likely disappear." *Id.* at 8.  To summarize, Dr. Gilbert concluded that "although [Mr. Landa-Arevalo] may be suffering from anxiety and demonstrates some personality traits associated with Obsessive-Compulsive Personality Disorder, these mental health issues are not considered severe or part of a severe mental illness." *Id.*

After evaluating all the available evidence, the court concludes that a preponderance of evidence favors the conclusion that Mr. Landa-Arevalo is more likely competent than not, and thus his proceeding should continue.  Mr. Landa-Arevalo has demonstrated an ability to consult with his lawyer with rational understanding as well as a rational and factual understanding of the proceedings against him.  The next two sections evaluate the evidence against both parts of the federal statutory standard for competence.

### A.  Does Mr. Landa-Arevalo have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding?

First, the court finds that Mr. Landa-Arevalo has the requisite "ability to consult with his lawyer with a reasonable degree of rational understanding" such that proceedings may continue. *Dusky*, 362 U.S. at 402.  Defense counsel questions Mr. Landa-Arevalo's ability to "rationally consider[ ] his attorneys' advice" or assist in his defense, Doc. 506 at 1, *see also* Doc. 463 at 4, but the court finds that Mr. Landa-Arevalo's lack of consulting with his lawyer is not a consequence of lacking "sufficient present ability" to do so, *Dusky*, 362 U.S. at 402.  Instead, as Dr. Gilbert reported, "there is evidence to suggest that Mr. Landa[-Arevalo]'s lack of cooperation with the legal system is purposeful rather than a product of mental illness or a cognitive deficit." Doc. 480 at 9.  Dr. Gilbert reported that "it is highly likely that he is delaying his case in order to remain in the United States so to avoid deportation to Bolivia." *Id.*  This

evidence is credible and persuasive to the court and it is consistent with the court's direct experience with the defendant.

Mr. Landa-Arevalo also possesses the ability to consult with his lawyer and assist in his defense.  Dr. Gilbert reported that Mr. Landa-Arevalo refused to discuss legal matters with her, stating that he would only discuss them "with his attorney."  Doc. 480 at 8; Doc. 502 at 12.  She opined that this was a conscious decision, noting it is not unusual for defendants to "worry about self-incrimination or how the report will be used against them."  Doc. 502 at 12.  Also, Dr. Gilbert reported that the defendant seemed "agreeable to working with an attorney."  Doc. 480 at 9.  This evidence suggests that Mr. Landa-Arevalo does not lack the *ability* to consult with his lawyer with a reasonable degree of rational understanding.  Mr. Landa-Arevalo's filings and in-court statements suggest that he grasps legal concepts with a relative quality of sophistication.  Instead, the court finds Mr. Landa-Arevalo has decided to refuse to consult with some of his lawyers for reasons known only to him.  Whatever those reasons are, an inability to consult with counsel isn't one of them.

### B.  Does Mr. Landa-Arevalo have a rational and factual understanding of the proceedings against him?

Next, the court considers the second requirement that Mr. Landa-Arevalo have a "rational as well as factual understanding of the proceedings against him."  *Dusky*, 362 U.S. at 402.  Dr. Gilbert reported that "there is evidence to suggest that [Mr. Landa-Arevalo] is aware of his current legal situation and the immigration issues associated with his current case."  Doc. 480 at 9.

As Dr. Gilbert explained, Mr. Landa-Arevalo has demonstrated an understanding of the proceedings against him.  In a phone call to his daughter, he asked if she had spoken to his lawyer.  *Id*. at 3.  Then, he asked her to contact one of his two lawyers to direct them to "take

charge of his case because that lawyer also works with immigration." *Id.* (internal quotation marks omitted). Dr. Gilbert also reported that Mr. Landa-Arevalo would not discuss his case, his rights, or basic courtroom procedures with her for fear of self-incrimination. *Id.* at 8; Doc. 502 at 12. But, she reported that he could describe "some of the events leading up to his arrest[,]" knew the charges against him, and had "some knowledge about courtroom procedures[.]" Doc. 480 at 9. Dr. Gilbert testified that Mr. Landa-Arevalo "always made sense" and was "logical." Doc. 502 at 13. She reported that he "demonstrated good reasoning skills, abstract thinking, and problem-solving throughout the evaluation period." Doc. 480 at 6.

From the available evidence, the court finds that a preponderance of the evidence favors the conclusion that Mr. Landa-Arevalo has a rational and factual understanding of the proceedings against him. The evidence favoring this finding significantly outweighs any evidence that he lacks such an understanding. This finding comports with the court's own experience with the defendant. He has made several pro se filings. And while his legal theories aren't always correct, they manifest some rational understanding of the proceedings against him. *See* Doc. 497 at 1, 4–5 (disagreeing "respectfully . . . with judge's decision made on July 15, 2021[,]" asking the court for appointment for new counsel "on the basis of 'conflict of interest[,]'" and asserting rights under the Fifth and Sixth Amendments); *see also* Docs. 468, 470, 489, 497.

## IV.    CONCLUSION

Angel Landa-Arevalo presently is competent for this criminal proceeding to continue. Mr. Landa-Arevalo has demonstrated an ability to consult with his lawyer with a reasonable degree of rational understanding as well as a rational and factual understanding of the proceedings against him. Evaluating the available evidence, the court concludes that Mr. Landa-

Arevalo is more likely competent than not and thus the proceedings against him may continue.

**IT IS SO ORDERED.**

**Dated this 8th day of November, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**