IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                Case No. 16-20016-07-DDC

ANGEL LANDA-AREVALO (07),

        Defendant.

## MEMORANDUM AND ORDER

This Order decides defendant Angel Landa-Arevalo's Motion for New Trial (Doc. 367). Mr. Landa-Arevalo argues that he was tried while incompetent, violating his procedural and substantive due process rights, and requiring a new trial. But before the court can reach the substance of Mr. Landa-Arevalo's motion, it first must decide an unusual procedural question. Specifically, can the district judge currently assigned to this case decide the motion on its merits even though a different district judge presided over Mr. Landa-Arevalo's jury trial? This question requires the court to apply Fed. R. Crim. P. 25(b)(1), which applies to post-trial matters when the trial judge is unavailable "because of absence, death, sickness, or other disability."

Below, the court addresses this procedural wrinkle and the substance of Mr. Landa-Arevalo's arguments. Concluding that the current district judge can decide the new trial motion on its merits, the court organizes its analysis into three parts. First, Part I outlines the material portions of the case's procedural history. Then, Part II addresses the Rule 25 question. And last, Part III addresses Mr. Landa-Arevalo's due process arguments for a new trial. As explained later in this Order, the court rejects both of Mr. Landa-Arevalo's due process arguments. The court thus denies his Motion for a New Trial.

## I.     Procedural History of the Case

### A.  Assigned District Judges

This case is unusual, but not unprecedented.  The court's random draw process originally assigned this case to former United States District Judge Carlos Murguia.  He presided over the case from its inception in 2016 until he resigned from our bench in February 2020.  He thus presided over Mr. Landa-Arevalo's jury trial in June of 2019.  But Judge Murguia didn't rule Mr. Landa-Arevalo's new trial motion before he left the bench.  After Judge Murguia departed, then-Chief Judge Julie A. Robinson reassigned the case to the undersigned as a successor judge.

For the most part, this Order follows the court's standard practice and refers to actions as those of "the court."  But sometimes, the Rule 25 analysis requires more precision than this terminology provides.  In those situations, the court refers to Judge Murguia's decisions as ones made by the trial judge and decisions by the currently assigned judge as those of the successor judge.

### B.  Mr. Landa-Arevalo's Charges and His Trial

The government originally charged Mr. Landa-Arevalo by filing a criminal complaint shortly after his arrest in February 2016.  *See* Doc. 1.  About a month later, a federal grand jury charged Mr. Landa-Arevalo and nine other defendants with conspiracy to distribute more than 50 grams of methamphetamine (Count 1).  Doc. 40 at 1–2.  The Indictment charged Mr. Landa-Arevalo with two other crimes—possession with intent to distribute more than 50 grams of methamphetamine (Count 10) and using a communication facility to facilitate a drug offense (Count 11).  *Id.* at 5–6.  Later in the case, the government dismissed the telephone charge in Count 11.  Docs. 107, 115.

Excepting three defendants who to this day remain as fugitives, all of Mr. Landa-Arevalo's co-defendants pleaded guilty.  But Mr. Landa-Arevalo chose to proceed to trial, and it began on June 3, 2019.  Four days later, the jury found him guilty of conspiracy (Count 1) and possession with intent to distribute (Count 10).  Doc. 340.  The operative quantity for both convictions was more than 50 grams.  *Id.*

In the end, Mr. Landa-Arevalo's new trial motion turns on his conduct during trial.  But events on the Friday before the trial's Monday start produced the first substantive issue presented by his motion.  On that Friday—May 31, 2019—the court convened an in limine hearing to address pretrial motions.  Before the court could take up those motions, Mr. Landa-Arevalo's trial counsel, Melanie Morgan, asked to address the court.  She reported that Mr. Landa-Arevalo, earlier that morning, had met with the second lawyer appointed to represent him.  The court had appointed this second lawyer—Angela Williams—to represent Mr. Landa-Arevalo for purposes of a recent plea offer made by the United States.  The court deemed it proper to appoint a second attorney because Mr. Landa-Arevalo had stopped communicating with his trial counsel two years earlier, in 2017.

Trial counsel reported that the government had offered Mr. Landa-Arevalo a plea deal.  In exchange for Mr. Landa-Arevalo's guilty plea to a new charge with a maximum custody sentence of 48 months, the government offered to dismiss all other charges.  Trial counsel also reported that Mr. Landa-Arevalo already had served some 39 months in custody and, given trial counsel's estimate of Mr. Landa-Arevalo's good time credit, he likely faced about three more months in custody even if the court imposed the maximum sentence permitted by law.

Trial counsel also reported about Mr. Landa-Arevalo's meeting with his plea counsel earlier that morning.  And "based on [plea counsel's] experience with him, things that were said

3

and [plea counsel's] observations," trial counsel believed she was duty bound to request a

competency evaluation of Mr. Landa-Arevalo.  Doc. 521 at 3.  Specifically, trial counsel said:  "I

am in a position where I'm obligated to ask this court to conduct a hearing under 18 U.S.C. 4241,

and that is to determine whether or not Mr. [Landa-]Arevalo is competent[.]"  *Id.*  Trial counsel

then summarized the government's plea offer and predicted the gist of the *Lafler/Frye* colloquy

that, she anticipated, the court later would conduct during the hearing.  Then, trial counsel

asserted, "We do not believe [Mr. Landa-Arevalo]'s in a position to evaluate that [plea] offer . . .

and that is part of the reason why we are asking for this court to conduct a competency hearing[.]"

*Id*. at 5.

 The prosecutor then asked to address the court.  After assuring that the government was

ready for trial, the prosecutor explained that he "trust[ed]" and "respect[ed]" defense counsel's

report and judgment about defendant's need for an evaluation.  *Id*. at 6, 13.  He then advised the

court, "[I]t's the government's position that this defendant should be evaluated [and the]

proceedings stayed accordingly[.]"  *Id*. at 14.

 Then, Mr. Landa-Arevalo addressed the court.  It's difficult to summarize the content of

his exchange with the court accurately.  So, and though it is lengthy, the court reports the ensuing

exchange, verbatim, here:

> **THE  DEFENDANT:**  I  do  understand  very  clearly  the  first  deal  from  the
> prosecution was to dismiss the charge and for aiding and abetting, and this morning,
> I hear that to be charged on that, and with 48 months, and which is—I shouldn't put
> in your hands to analyze what they are trying to deal me.
>
> **THE COURT:**  You know, we've had different court appearances, and every case
> is different.  This type of case, I don't think happens very often, if at all with my

experience, but there are times where defendants have chosen not to talk to their attorneys, and not cooperate, and the case had to proceed despite that. Your situation is definitely one where it's different, but what—again, what I was able to determine is that what was taking place was being—was taking place because you were choosing not to talk to your attorneys for your own reasons. I'm not going to say your reasons' [sic] good or bad, but your reasons, and so, that's why we continued with your case and had different attorneys, but at a certain point, when it became clear that's what was taking place, the court can't let that stop the court from having that case decided one way or the other. So, that's happened. Now, today I will tell you, your conversation with me, actually for counsel, leads me to believe he [Mr. Landa-Arevalo] does understand what's going on. He's communicated with me in a manner unlike other court appearances where the court believes you have an appreciation for certain things more than you've ever showed to the court before. So, trying to balance that with the need for an evaluation, because Mr. Landa-Arevalo, I'm not telling you, and I would not tell any defendant whether or not to accept a plea offer—plea offer or to go to trial. Every defendant has a constitutional right to a jury trial. So, I always hesitate to get involved in that decision. That decision is yours, Mr. Landa-Arevalo. It's not mine, and it's not the court's offer to you about that plea. That plea comes from the government, not myself. I don't control any of that. I have no say in what the government offers to you. What I understood is that the government is trying to offer a plea for this charge of aiding and abetting, which is different from all the charges you had pending against you, and in some ways, carries less consequences than being found guilty of the other

ones, and I—but if that plea—what I heard is that the government's offering this plea, as well as a recommended sentence of 48 months imprisonment.  Is that right, 48?

**MS. MORGAN:**  Yes, Judge.  The statutory cap is 48 months, and so, they don't have to recommend anything.  By operation of law, it will be.

**THE COURT:**  So—so, what your attorney, Miss Morgan, has told me is that the law says that your sentence would be no more than 48 months.

**THE DEFENDANT:**  And Your Honor—oh.

**THE COURT:**  So—so, for 48 months, and so, what I was told, and I don't know this, but what I was told is that based on the time that you've all ready [sic] served, that it would appear that if that plea was accepted, that to satisfy that sentence, you only would have approximately three more months in prison, and then the case would be finished in regards to an imprisonment sentence.  There may be some type of supervised release to follow.  I don't know.  I don't know anything about that.  But that's what I understand that has been presented.  Now, I don't know if you understand that, or if you talked to your attorney about that, or one way or the other, and if you wanted to, Mr. Landa-Arevalo, if you had questions throughout this whole process, your questions should have been first mentioned with your attorneys, 'cause they're legally trained, they know the law, and they can advise you.  They could advise you, but then again, it's your decision, but at least you have a conversation with the attorney that knows the law, may be able to answer some of your questions.  So, again, I'm not trying to force you to do something you do not want to do.  That's up to you, the plea or go to trial, but what's before the court is a question about

6

whether or not I should order an evaluation of you right now, stop everything until that evaluation takes place, and the evaluation is to decide whether or not you understand what is taking place, and as a result, that you're able to make a decision knowing the consequences of your decision.  So, I don't know right now if you want to talk to your attorneys first, or talk to Miss Williams [plea counsel], and she can go over this more with you, and talk to you about that, and usually, that's our procedure.  After I say something, I don't ask for defendants to respond before they talk to their attorney.   So, I'm going to give you that same opportunity I give everybody else.  So, I'll stay here on the bench, but I'm actually going to stop for just a moment.

**THE DEFENDANT:**  With tremendous respect, Your Honor, I respect everything you said, Your Honor, but you should not say to me that I do this.  It was Miss Williams who just came from you, and Your Honor, when the code is violated, one code of conduct is violated, it has to be on the records, and I appreciate it for—for being listened to me, and thank you, Your Honor.

**THE COURT:**  Okay.  I'll still go ahead and stop right now for a moment and see if counsel can speak to Mr. Landa-Arevalo.  Thank you.

(Court recessed.  Proceedings then continued as follows:)

**THE COURT:**  Court took a recess here on the bench to—if defendant was so inclined, to go ahead and talk to his attorneys regarding what I said, but also to kind of consider some of the things that have been mentioned this morning regarding our case which is set for trial on Monday.  I don't know if there's anything new to report from defendant's counsel?

**MS. MORGAN:**  Nothing, Judge.

**THE COURT:**  But what I'll do at this point, Mr. Landa-Arevalo, again, I want to make clear to you that this plea is not from the court.  I am not telling—I'm not the one offering you the plea.  It's the government.  Do you understand that?

**THE DEFENDANT:**  Clear to me, Your Honor.  Thank you.

**THE COURT:**  And for the record, what would be the—the plea offer at this time, Mr. Hunt, [the prosecutor], in regards to this case?

**MR. HUNT:**  Judge, he would plead to an information charging aiding and abetting, use of a communication facility in furtherance of a drug trafficking crime.  The government would be requesting a sentence of 48 months.  The defendant would be free to ask for time served.  At this point, the government believes that is 39 months.  So, with good time, etcetera, he could be out of prison in a couple of months or three months.  Three years of supervised release, no fine, and a hundred dollar special assessment fee.  Should the defendant, in the government's view, and I'm saying this as I would to a defense attorney in—in a plea offer, my belief under the sentencing guidelines, should he go to trial and be convicted, and I'm not representing he will or he won't, the defendant's base offense level would be—total offense level would be 168 months.  Whether he applied, or whether safety valve would be applied would be really up to him if he was able to satisfy US Probation that he had provided information about his conduct.  I'm not hopeful that that would occur.  The low end is 168, the high end is 210.  So, the defendant, should he go to trial, he is risking a guideline sentence, and again, the guidelines are advisory, the

court obviously knows that; 168 to 210 months.  I think that encompasses the plea agreement as we stand here today.

**MS. MORGAN:**  If I can just add, Judge, umm, this plea agreement that has been extended by the prosecutor in this case is different, it is a different allegation and charge than what Mr. [Landa-]Arevalo was originally charged with in the indictment.  This is something completely different, and I just wanted to make sure everybody was aware that it is different.

**THE COURT:**  Mr. Landa-Arevalo, did you hear what the government's attorney said in regards to this plea offer?  And I'll just repeat, it's not from the court, it's from the government, but the government indicates that what they're willing to offer to you as a plea is pleading guilty to a charge of aiding and abetting, as well as through that plea, making a request to the court that you be sentenced to 48 months imprisonment with something—I don't know if you understand this, your attorney could actually ask the court instead of the 48 months to just give you a sentence of time served, which is the time that you've all ready [sic] served.  It would be up to the court then to decide between those, but the government has said that the plea would have a maximum sentence of 48 months.  The government's attorney then said something that you should be aware of, and again, this is just what the law is, that you have the right to go to a jury trial.  A jury could find you not guilty, and then the case would be closed.  A jury could find you guilty, and if it found you guilty of these charges, what the government said, and it says it in every case, not just yours, that the potential sentence then at that time would be a sentence with a range that on the low end would be, under the guidelines, a minimum of 14 years.

So, again, at that point, it would be up to the court to decide in the end, but there's a range there the court would have to consider if you were found guilty. Now, a jury could find you not guilty, and that would not be an issue. But if it found you guilty, then that would be the sentence the court would have to consider. So, in regards to that plea offer, a couple things. First, I'm just going to ask you, did you understand what the government—the government's plea offer—offer is?

**THE DEFENDANT:** I want to assert, with respect, the Fifth Amendment, Your Honor, and no comment.

**THE COURT:** And again, you know, that's fine, but I'm not sure if that's really involved with you answering your—with this question about whether or not you understood or you heard what the government had to say. That's not going to subject you to any criminal penalty by answering that question. I'm not asking you to plead guilty or to say anything regarding your case. It's just, did you hear what the government said in regards to this plea offer?

**THE DEFENDANT:** No comments, Your Honor.

**THE COURT:** So, what I'll ask you then at this point is, there's the plea offer, and the choice you would have today is to tell the court that you want to accept the plea offer or—and the plea offer's from the government, or I would tell you that under the law, the constitution, the court's telling you, you have your right to a jury trial which is scheduled to start on Monday. So, my question to you is, do you understand that, and then also, do you want your jury trial to start on Monday?

**THE DEFENDANT:** No comment, Your Honor.

**THE COURT:** Well, your jury trial is scheduled to start on Monday, so, if it—if it takes place, then we're going to call the jury in, and the case is going to proceed to trial.  So, I'll just ask you, even though you've said no comment, but you understand that?

**THE DEFENDANT:**  No comments, Your Honor.

**THE COURT:**  All right.  I need a moment, but is there anything else from counsel?

**MR. HUNT:**  No, Your Honor.

**MS. MORGAN:**  No, Judge.  Thank you.

**THE COURT:**  This is taking some time, but it's of a certain serious nature, court believes time is necessary to actually make some determinations.  One of the things that was mentioned at the very beginning was, again, defendant's counsel asking the court to consider ordering an evaluation.  With that in mind, there was some reference, Miss Williams, to a conversation you had with him at some point outside the courtroom.  So, for the court to make its determination, I'm going to ask that you come up here, and here in private, share with the court, because I think you mentioned something about you didn't feel comfortable saying certain things.

*Id*. at 14–24.

The court then heard from Mr. Landa-Arevalo's plea counsel—Angela Williams—during a sidebar at the bench.[1]  She reported that, earlier in the day, Mr. Landa-Arevalo "talked over [her]" as she tried to summarize the plea offer and tried to advise him about the effect of the putative plea on his immigration status.  *Id.* at 25.  According to plea counsel, Mr. Landa-

---

[1]     It appears that the prosecutor wasn't present during this sidebar with Mr. Landa-Arevalo's plea counsel.  *See* Doc. 521 at 24–27.  And originally, the court sealed this portion of the transcript.  *See id.* at 27; *see also* Doc. 324.  But the court later unsealed this part of the transcript so the government could consider the colloquy when responding to defendant's new trial motion.  *See* Doc. 385.

Arevalo repeatedly said that he "can't do anything behind the court," and he "can't talk to [plea counsel] anything about this case if it's behind the court[.]" *Id.* Also, plea counsel reported another conversation with Mr. Landa-Arevalo during a short break during the in limine hearing. According to plea counsel, Mr. Landa-Arevalo kept saying, "respect my decision, I have to do this for my life." *Id.* at 25–26. Plea counsel also reported that Mr. Landa-Arevalo was "very agitated" for a time but then, "he just stopped talking, and started looking at the floor, and just kept saying good day, good day." *Id.* at 26.

The trial judge then ruled defense counsel's oral motion asking for a competency evaluation. He denied the motion for reasons that the trial judge explained at length in the following excerpt:

> **THE COURT:** Thank you to counsel, and also thank you, Mr. Landa-Arevalo, for hearing what the court had to say. Again, we're set for our jury trial on Monday. At the very beginning, and when I talked about why we're here today, Miss Morgan [trial counsel] on your behalf informed the court of some information she had received from Miss Williams [plea counsel] that made her believe that in good faith, in good conscience, she had to tell the court about, and also make a—a request that there be an evaluation regarding your understanding of what's taking place, and your ability to comprehend that, and also assist in your defense. And so, I heard what she had to say, and I also spoke with Miss Williams in regards to her conversation with you. And in regards to that bench conference, if there were ever a transcript ordered, that is sealed for the record. In regards to the government, the government's also told the court there's some concerns from the government regarding this information, and the government also weighed in, commented on the evaluation

taking place, and how that in the end may serve the interests of the public besides yourself in regards to having that take place for different reasons. Part of that also which took place, Mr. Landa-Arevalo, is that what was communicated to the court was a plea offer that the government made to you, and it was first mentioned by Miss Morgan, and then the government's attorney for the record set out the entire plea offer, and so, I wanted to make sure you understood what it was, and then also make it clear that the plea offer is from the government, it's not from the court, and the court has no say in regards to the plea offer as to what it is and also whether or not you choose to accept it. Those are things outside of the court's control. But I did mention to you that the court is telling you, you do have a constitutional right to a jury trial like the one we have scheduled to begin on Monday. So, the court sets all that out for the record. For the record, in regards to the oral motion for an evaluation, court would note the following from the statute, that that would take place to decide whether or not defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. And again, I think in the end, your case is a special case to the—for the court based on your own special set of circumstances, and specifically, for the record, your own conscious decisions based on who you are, your personality and your opinions and views about not only this case but the law. So, I'll note again for the record the following. You've been in court a number of times. You've had a number of different attorneys, and we've actually had attorneys replaced based on the fact that you were unwilling to communicate with them, and that was clear from

the beginning.  It's been clear with Miss Morgan representing you, that you've made a conscious, intentional decision not to speak to her, and as a result, in spite of that, I would say, Miss Morgan has done her best to represent you by filing motions on your behalf, arguing on your behalf, but she's in some ways been limited by your decision not to speak with her.  But I note for the record, there have been a number of issues that she's raised on your behalf that we have before us today, that again indicate to the court that she is representing you to the best of her abilities, and in compliance with any ethical considerations and issues.  That's clear.  In regards to the request for an evaluation, the court is going to deny that for the following reasons.  There's been a pattern of behavior and conduct from defendant from the very beginning of the case that has interfered with counsel's ability to represent him in the usual manner, but that doesn't rise to the level of the court finding, especially since this pattern has been repeated over and over again by defendant, that it's based on a mental disease or defect, and I'm not a psychiatrist, I'm not a psychologist, but on the court's observation, Mr. Landa-Arevalo has decided and has chosen consciously to not speak to his attorney, and those are reasons the court finds don't rise to that level, because based on his other comments, it appears that he does not believe he's guilty of anything.  He does—he doesn't believe that he's going to waive any Constitutional rights that he may have, and in that regard, I don't think he's completely aware of what those rights are, but he's chosen not to find out or have counsel assist him with that, and again, that's his decision.  For those reasons, the court does not believe there's been a sufficient showing today.  I considered what was said in the conversation.  Again, in the past, what the court has found to be

reasons for evaluations are evidence—or not evidence, but at least statements that the defendant's mental state is one where, through comments in the past, what that's meant, they believe they've heard different things that are not actually being said, voices being said, or they're making comments that are clearer on their face, they're truly not based on reality, and in this instance, again, it's more defendant knowing that he's facing charges, knowing he's incarcerated, and knowing that he doesn't want to cooperate with any—any counsel, that he's making his decisions and choices, and again, that's—that's apparent, but that's not a reason for the court, again, two days from trial, three days from trial to have an evaluation.  Nothing against present counsel, but he's had multiple counsels, the same reasons, this pattern of behavior, and there's never been a request for an evaluation, and I don't have the contact that everyone has that's been working with defendant, but I don't see a deterioration in his behavior.  In fact, to the contrary, I see a consistent, confirmed pattern of behavior from the very beginning.  So, the court's considered the request for an evaluation, but I don't find a sufficient basis today to—to grant the request.  So, with that, Mr. Landa-Arevalo, we're scheduled for trial.  It's going to start on Monday.  And do you understand that your trial's starting on Monday?

**THE DEFENDANT:**  As you say, yes, Your Honor.

**THE COURT:**  So, your trial is going to start.  The plea offer was mentioned.  It was presented.  I would find that your no comment in regard to that is not either saying yes, I accept it, or no, I don't, but it's noted for the record.

*Id*. at 27–32.  The in limine hearing then continued and the trial judge ruled on issues unrelated to the current motion.[2]

The following Monday—June 3, 2019—Mr. Landa-Arevalo's jury trial commenced.  It concluded with a verdict finding Mr. Landa-Arevalo guilty on the charges in Count 1 and 10.  The jury's verdict and the United States Sentencing Guidelines provide significant perspective about the rational appeal of the government's pretrial plea offer.  The government's plea proposal offered to dismiss all other charges in exchange for Mr. Landa-Arevalo pleading guilty to a new charge with a maximum sentence of 48 months.  In contrast, Mr. Landa-Arevalo's guidelines range (as calculated by the Presentence Investigation Report) is 235 to 293 months.  Doc. 408 at 27.  And if he were to prevail on his objections to this Report, he still would face a guidelines range of 121 to 151 months.  *Id*. at 38.[3]

During this trial, Mr. Landa-Arevalo made several unsolicited statements.  His new trial motion argues that those statements further call his competency into doubt.  The motion doesn't specify each of these "outbursts"—the motion's term for them—but part III.B. of this Order addresses a representative sampling of them.

### C.  Post-Trial Proceedings

Since reassignment to the successor judge, the court has labored to posture the case where it could decide defendant's new trial motion.  These efforts have encountered strong headwinds.

*First*, while still represented by trial counsel, Mr. Landa-Arevalo filed a pro se motion asking the court to appoint new counsel.  Doc. 397.  Reporting an irreconcilable conflict, trial

---

[2]     The proceedings for the remainder of the May 31 in limine hearing are reported in a separate transcript.  *See* Doc. 522.  The court has reviewed this transcript and its contents aren't pertinent to the subject matter of the current motion.

[3]     Mr. Landa-Arevalo submitted several pro se objections to his presentence report.  Doc. 387.  The court hasn't yet decided whether to permit hybrid representation at the sentencing stage.

counsel joined Mr. Landa-Arevalo's motion, and asked to withdraw from representing Mr. Landa-Arevalo.  The court granted the motion.  Doc. 431.

*Second*, Mr. Landa-Arevalo's new appointed counsel—his current counsel—understandably needed time to learn the case.  Once new counsel was up to speed, he filed a motion seeking a competency evaluation for Mr. Landa-Arevalo.  Doc. 463.  The government joined the motion, and the court granted this request.  Docs. 469, 471.

*Third*, the COVID-19 pandemic delayed efforts to transport Mr. Landa-Arevalo for his evaluation.  *See* Doc. 477.  But the evaluating psychologist eventually completed the evaluation and concluded that Mr. Landa-Arevalo was competent for proceedings to continue.  Doc. 480 at 9.

*Fourth*, Mr. Landa-Arevalo chose to stop communicating with his new appointed counsel.  Claiming that his counsel had lied to him, Mr. Landa-Arevalo filed several motions to replace him.  *See* Docs. 468, 470, 489, 497.

*Fifth*, new counsel invoked Mr. Landa-Arevalo's right to challenge the evaluating psychologist's conclusion that defendant was competent.  The court convened a competency hearing on August 18, 2021.  *See* Doc. 502 (Transcript of Competency Hearing).  The government called the examining psychologist and defense counsel conducted a substantial cross-examination.  *See id.*  The court then established a schedule for post-hearing briefs, and both parties submitted them.  *See* Docs. 505 & 506.

*Last*, on November 8, 2021, the court issued a Memorandum and Order finding that, at that time, Mr. Landa-Arevalo was competent for proceedings to continue.  *See* Doc. 512 at 14 ("Angel Landa-Arevalo presently is competent for this criminal proceeding to continue.").  But

that Order did not address the substantive focus of this Order, *i.e.*, Mr. Landa-Arevalo's

competence during his June 2019 jury trial. The court turns to that issue, next.

## II. Can the successor judge properly decide Mr. Landa-Arevalo's new trial motion even though a different judge presided over his trial?

### A. Fed. R. Crim. P. 25

The Federal Rules of Criminal Procedure permit one district judge to replace another,

even after trial has begun. Fed. R. Crim. P. 25 divides this situation into two parts. *First*, Rule

25(a) applies when, during trial, "the judge before whom the trial began cannot proceed because

of death, sickness, or other disability[.]" Fed. R. Crim. P. 25(a)(1). This part of Rule 25 doesn't

apply here, as the trial judge continued his work through verdict. *Second*, Rule 25(b) applies

when, "[a]fter a verdict or finding of guilty," the judge "who presided at trial" cannot complete

the court's duties because of "absence, death, sickness, or other disability." Fed. R. Crim. P.

25(b)(1). This part of Rule 25 arguably applies to this case because the trial judge completed the

trial, but later left the bench before deciding Mr. Landa-Arevalo's new trial motion.

There is a wrinkle, however. Rule 25(b)(1) doesn't explicitly identify the trial judge's

resignation as a circumstance when one district judge may replace another, post-trial. Instead, the

rule permits substitution when the trial judge is absent, dead, suffering from an illness, or some

"other [form of] disability" prevents him from completing the court's duties. Fed. R. Crim. P.

25(b)(1). Federal courts consistently have interpreted this phrase in Rule 25 broadly, holding that

it includes unavailability resulting from recusal, retirement, and expiration of an assignment to the

judicial district where the case was tried. *See In re United States*, 614 F.3d 661, 662 (7th Cir.

2010) ("The term 'other disability' in Rule 25(a) includes disability by reason of recusal." (further

internal quotations omitted)); *Coleman v. United States*, 334 F.2d 558, 563–64 (D.C. Cir. 1964)

(same for retirement); *Hvass v. Graven*, 257 F.2d 1, 2–4 (8th Cir. 1958) (same where trial judge

was unavailable because his temporary assignment to judicial district of trial had expired).  Other cases have concluded, however, that the reach of "other disability" is not limitless.  *See United States v. Harris*, 679 F.3d 1179, 1182 (9th Cir. 2012) (deciding that a judicial district that was "in turmoil" following shooting of its chief judge didn't qualify as a situation permitting substitution under Rule 25(b)).

The court has located no authority deciding whether Rule 25 applies after a trial judge's resignation from the bench.  But the court predicts our Circuit, if faced with the question, would conclude that the trial judge's resignation qualifies as a form of "other disability" under Rule 25(b)(1).  There are several reasons for this conclusion.  A judge's resignation from his commission disables him from continuing to preside over the case.  It thus amounts to a form of "other disability."[4]  Also, in a sense, resignation is a broader form of recusal, and is, in some sense, akin to retirement.  As discussed above, courts have held that both recusal and retirement fall under Rule 25(b)(1)'s "other disability" umbrella.  Finally, a rule of necessity favors the conclusion that Rule 25(b)(1) applies here.  Concluding otherwise would place the case in limbo with no other means to complete the court's work.

In sum, the court is persuaded that the Tenth Circuit likely would conclude that a trial judge's resignation qualifies as a form of "other disability" under Rule 25(b).  It thus concludes that the undersigned judge, as a successor judge under Rule 25(b), is authorized to complete the court's work in this action.

---

[4]     It's also possible that a trial judge's resignation might qualify as an "absence" under Rule 25(b)(1). *See United States v. Dowd*, 385 F. Supp. 2d 1240, 1242 (M.D. Ala. 2005) (concluding that senior judge who tried case but was "away from the courthouse all summer" was, "in fact, absent" under Rule 25), *aff'd* 451 F.3d 1244, 1256 (11th Cir. 2006).

**B.  How should the court apply Rule 25(b) to this case?**

As one leading treatise puts it, "That a substitute judge may exercise [the powers identified in Rule 25] does not mean that he must do so or that he may with propriety do so in every case."  2 Charles Alan Wright & Peter J. Henning, *Federal Practice and Procedure* § 393 (4th. ed. 2022).  This observation comports with one of the leading Rule 25 cases, the Eighth Circuit's decision in *Connelly v. United States*, 249 F.2d 576 (8th Cir. 1957).  There, the court identified a threshold determination that successor judges must answer:  "Under this rule it [is] the duty of the successor judge, in the first instance at least in the exercise of sound judicial discretion, to determine whether he could satisfactorily perform the duties of the judge who presided at the trial and whom he succeeded."  *Id.* at 579; *see also United States v. Phillips*, 540 F.2d 319, 332 (8th Cir. 1976) (concluding that decision whether to grant new trial when trial judge died at conclusion of trial was committed to sound discretion of successor judge).  When successor judges conclude that they can perform the post-trial duties, they properly can do so. But, when successor judges conclude that they "cannot perform the post-trial duties," Rule 25 provides explicit direction.  *See* Fed. R. Crim. P. 25(b)(2)(A).  In that circumstance, successor judges "may grant a new trial."  *Id.*  Successor judges also may grant a new trial when one "is necessary for some other reason."  Fed. R. Crim. P. 25(b)(2)(B).

Fortunately, the court is not at sea in determining whether the undersigned, as successor judge, can perform the post-trial duties.  The Eighth Circuit's decision in *Connelly* provides a useful guide.  In *Connelly*, the originally assigned judge presided over the entire trial.  When the government rested, defendants moved for acquittal.  The court denied their motions.  Defendants then presented their evidence, rested, and renewed their acquittal motions.  This time, the trial judge announced he would reserve ruling on the acquittal motions.  He then submitted the case

and the jury returned guilty verdicts.  Defendants then moved for judgment of acquittal notwithstanding the verdict or, alternatively, for a new trial.  A few days before the post-trial hearing on defendants' motions, the trial judge passed away.  The court then assigned the case to a successor judge, who conducted a hearing and denied all pending motions.  *Connelly*, 249 F.2d at 578–79.

On appeal, defendants argued that "they were deprived of a fair trial" when the successor judge decided their post-trial motions for acquittal and a new trial.  *Id.* at 579.  They argued that the successor judge wasn't qualified to decide those motions because, "not having presided at the trial of the case he did not have the 'feel of the case.'"  *Id.*  The Eighth Circuit rejected this argument, noting that the successor judge had ruled the motions "some six months [after he was assigned the case] and it [wa]s quite apparent from this record that in that time he thoroughly familiarized himself with the facts and satisfied himself that he could perform the duties to be performed by the presiding judge."  *Id.*

In so concluding, however, the Eighth Circuit recognized that some trials would require a different outcome:

> There might well be a criminal case in which the testimony would be of such a character that a successor judge could not fairly pass upon the questions here presented.  If the evidence of the government were denied and the question of the credibility of the government witnesses was a serious issue [then] the conflict in the evidence and the question of the credibility of witnesses might be a matter of very serious consideration.

*Id.* at 580.  The Circuit then explained why *Connelly*'s facts didn't present this problem.  The Eighth Circuit reasoned there "was not much to be gained by hearing the testimony of the witnesses and observing their demeanor that could not be gained by reading the testimony[.]"  *Id.*  The Eighth Circuit thus held that the successor judge hadn't abused his discretion by deciding that he could perform the court's post-verdict duties.  *Id.*; *see also United States v. Casas*, 425

21

F.3d 23, 56 (1st Cir. 2005) (opining that a successor judge who inherits a case post-trial "[o]rdinarily" is "capable of assessing the credibility of the witnesses and the evidence at trial by [performing] a thorough review of the record" (quotation cleaned up)).

### C. Conclusion

Applying *Connelly*'s principles to this case and Mr. Landa-Arevalo's specific arguments for a new trial, the court concludes that the undersigned judge, acting as a successor judge, properly can complete the court's work in the case under Fed. R. Crim. P. 25(b).  This case doesn't present the circumstances outlined in *Connelly* that favor a conclusion that the successor judge "could not fairly pass upon the questions here presented."  249 F.2d at 580.  The post-trial motion here doesn't involve questions about the sufficiency of the government's evidence or about the credibility of a government witness.  Instead, the motion presents questions of Mr. Landa-Arevalo's competency before and during trial.  The court thoroughly has reviewed the pertinent portions of the transcript from the in limine hearing and the trial.  It also has held an evidentiary hearing on this specific motion, when Mr. Landa-Arevalo's former trial counsel testified about her experiences with Mr. Landa-Arevalo and about his actions and behavior before and during trial.  And, since this case's reassignment, the court has observed (on multiple occasions) Mr. Landa-Arevalo's conduct, which is consistent with the conduct identified in his new trial motion.  Having conducted that review of the transcripts and having observed Mr. Landa-Arevalo's conduct in person, the court, exercising its discretion, concludes that the undersigned judge can "satisfactorily perform the duties of the judge who presided at the trial and whom he succeeded."  *Connelly*, 249 F.2d at 579.  So, next, the court turns to the substance of Mr. Landa-Arevalo's new trial motion.

III.    **Mr. Landa-Arevalo's Two Due Process Arguments**

Mr. Landa-Arevalo's Motion for New Trial makes two distinct but related arguments. Both claim that the court has denied his due process rights. *First*, he contends, the court committed "a procedural Due Process error . . . when [it] failed to order a competency evaluation and conduct a competency hearing[.]" Doc. 367 at 1. Citing "doubt . . . raised by both the prosecution and the defense about Mr. [Landa-]Arevalo's ability to proceed[,]" *id.*, this argument turns on the trial judge's decision not to order a competency evaluation during the May 31, 2019, limine conference. *Second*, the motion separately argues that Mr. Landa-Arevalo "was incompetent at the time of the trial[,]" so the court must set aside his conviction "as a substantive Due Process violation." *Id*. Mr. Landa-Arevalo's motion thus cleanly raises two distinct arguments targeted at two different moments:  (1) a procedural due process argument based on the trial judge's decision during the May 31, 2019, limine conference; and (2) a substantive due process argument trained on the jury trial in its entirety.

But, the circumstances that have transpired since trial counsel filed Mr. Landa-Arevalo's motion—*i.e.*, the Rule 25 issues discussed above—complicate this clean divide. Trial counsel filed the new trial motion when this case still was assigned to the trial judge. Trial counsel thus had no reason to suspect that someday, a successor judge would decide that motion. Nevertheless, that's the reality now. And, unfortunately for Mr. Landa-Arevalo, Rule 25 prohibits a successor judge from reviewing a decision made by the trial judge. *See United States v. Sisk*, 629 F.2d 1174, 1179 (6th Cir. 1980) (concluding that Rule 25 "does not authorize the successor judge to sit in appellate review of his predecessor's actions").[5] The court thus won't

---

[5]     While *Sisk* was a Rule 25(a) case, the court finds no reason why the same principle doesn't apply to cases involving substitution under Rule 25(b).

review the trial judge's May 31, 2019, decision denying a competency hearing for the most basic

of reasons: it has no authority to review the trial judge's decisions.

At the same time, the court is not barred from considering Mr. Landa-Arevalo's second

argument, *i.e.*, that he was incompetent during his trial. While Mr. Landa-Arevalo's challenge to

the trial judge's pretrial decision necessarily relies on events that had occurred before and during

the May 31 hearing, his second challenge—that he actually was incompetent during trial—is

broader. It relies on conduct and events occurring both before *and after* the trial judge denied the

motion for a competency evaluation. *See, e.g.*, Doc. 367 at 2 (citing Mr. Landa-Arevalo's

conduct during jury selection); *see also id.* at 4 (noting that Mr. Landa-Arevalo "interjected

during trial that he had no counsel" while trial "counsel was clearly physically present next to

him in the courtroom"). In this sense then, Mr. Landa-Arevalo's second challenge asks the court

to make a decision that the trial judge never made because the trial judge never addressed a

competency challenge after the May 31 limine hearing.[6] Thus, the court concludes that ruling

this second challenge won't violate the rule against a successor judge "sitting in review of" an

earlier decision by the trial judge.

There's just one final wrinkle to smooth. Mr. Landa-Arevalo's motion ties his procedural

due process argument to the May 31 decision and his substantive due process claim to the trial.

*See* Doc. 367 at 1. And, as discussed above, review of the trial judge's May 31 decision is off

the table. But that doesn't mean the court can't consider both of Mr. Landa-Arevalo's due

---

[6]      One might argue that the trial judge implicitly decided that Mr. Landa-Arevalo was competent
because he let the case proceed to verdict. And indeed, the governing legal principles provide some
support for this view. *See United States v. Williams*, 113 F.3d 1155, 1160 (10th Cir. 1997) ("Even if
defendant appears competent at the start of trial, 'a trial court must always be alert to circumstances
suggesting a change that would render the accused unable to meet the standards of competence to stand
trial.'" (quoting *Drope v. Missouri*, 420 U.S. 162, 181 (1975))). Thus, while one rationally could argue
that the trial judge implicitly ruled that Mr. Landa-Arevalo was competent during trial, the court is
unconvinced that the prohibition against successor judges sitting in review extends to such implicit rulings.

process arguments.  Indeed, Mr. Landa-Arevalo's second argument—that he was incompetent at trial—implicates both procedural and substantive due process concerns.  Mr. Landa-Arevalo appears to argue that even if his conduct before trial didn't warrant a competency evaluation, that pretrial conduct *plus* his conduct at trial sufficed to require a competency evaluation.  Consequently, he contends, the trial judge's failure to order a competency evaluation at trial (*i.e.*, a procedural due process violation) raises a question whether Mr. Landa-Arevalo was competent at trial (*i.e.*, a substantive due process violation).  *See* Doc. 367 at 6 ("Here, because Mr. [Landa-]Arevalo's procedural due process rights were violated, we are left with doubt as to Mr. [Landa-]Arevalo's competence at the time of trial, necessitating a new trial.").  So, taking a cautious approach to these unusual circumstances, the court examines Mr. Landa-Arevalo's arguments under the standards for both procedural and substantive due process.  *See Walker v. Att'y Gen.*, 167 F.3d 1339, 1344 (10th Cir. 1999) (collecting cases and conceding that Circuit precedent has "on occasion blurred the distinctions between the two claims [for procedural and substantive due process], particularly when both claims are raised together").

To sum it all up:  the court can't consider Mr. Landa-Arevalo's challenge to the trial judge's May 31 denial of a competency hearing because the court, as a successor judge, can't review the trial judge's rulings.  But the court can consider Mr. Landa-Arevalo's argument that he was incompetent during his trial (or had at least raised a doubt about his competency at trial) because it asks the successor judge to make a decision the trial judge never made.  So, this Order now addresses Mr. Landa-Arevalo's conduct at trial (and his pretrial conduct as context) to determine whether he has shown violation of his procedural or substantive due process rights.  The court takes up each claim after reciting the legal standard governing each claim.

### A.    Due Process Legal Standards

A substantive due process claim requires Mr. Landa-Arevalo to assert that "he was, in fact, tried and convicted while mentally incompetent." *Walker*, 167 F.3d at 1344 (citation omitted); *see also Medina v. California*, 505 U.S. 437, 453 (1992) ("[T]he criminal trial of an incompetent defendant violates due process."). The standard for competence has two prongs. It asks whether defendant (1) has "sufficient present ability to consult with [a] lawyer with a reasonable degree of rational understanding" and (2) "has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam); *United States v. Boigegrain*, 155 F.3d 1181, 1189 (10th Cir. 1998); *see also* 18 U.S.C. § 4241(d) (providing that if the court determines that a defendant is "mentally incompetent . . . , the court shall commit the defendant to the custody of the Attorney General[,]" who "shall hospitalize the defendant for treatment in a suitable facility").

Procedural due process rights are different. A court can violate those by "fail[ing] to conduct a hearing on [defendant's] competency on its own initiative[.]" *United States v. Williams*, 113 F.3d 1155, 1160 (10th Cir. 1997). Indeed, even "if defendant appears competent at the start of trial, 'a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial.'" *Id.* (quoting *Drope v. Missouri*, 420 U.S. 162, 181 (1975)). Our Circuit has articulated the circumstances obligating a trial court to conduct a hearing, *i.e.*, the point where inaction becomes a failure of the due process guarantee, in various ways. But these various expressions have consolidated and now, they require a competency hearing when facts raise a "'bona fide doubt' regarding [defendant's] competency to stand trial." *Walker*, 167 F.3d at 1343 (quoting *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995)). In the context of a direct appeal from a trial in

federal court, the Circuit has explained that a trial judge must conduct a hearing even without a request when "'a reasonable judge, situated as was the trial judge . . . should have experienced doubt with respect to competency to stand trial.'"  *Williams*, 113 F.3d at 1160 (quoting *United States v. Crews*, 781 F.2d 826, 833 (10th Cir. 1986)).  The Circuit has expressed a similar test for collateral attacks:  the defendant "must establish that a reasonable judge should have had a bona fide doubt as to [defendant's] competence at the time of trial."  *McGregor v. Gibson*, 248 F.3d 946, 954 (10th Cir. 2001) (en banc); *see also* 18 U.S.C. § 4241(a) (providing that court must grant competency evaluation "if there is *reasonable cause* to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent" (emphasis added)); *United States v. Cornejo-Sandoval*, 564 F.3d 1225, 1233–34 (10th Cir. 2009) (noting that the "'bona fide doubt' standard . . . is very similar to the ['reasonable cause'] language in § 4241" and concluding that there's no meaningful difference between the two standards).

In short, a "procedural competency claim is based upon a trial court's alleged failure to hold a competency hearing, or an adequate competency hearing, while a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent."  *McGregor*, 248 F.3d at 952.  So, our Circuit has explained, "an individual raising a procedural competency claim is held to a lower burden of proof than one raising a substantive competency claim."  *Id.*  When an individual raises both procedural and substantive arguments, our Circuit regularly "consider[s] the procedural claim first."  *Cornejo-Sandoval*, 564 F.3d at 1232; *see also Williams*, 113 F.3d at 1161 (explaining that district court's failure to conduct an adversarial competency hearing—which violated defendant's procedural due process right—

necessarily raised question about whether defendant's "substantive due process right to stand trial while competent" also was violated).

**B.      Procedural Due Process Argument**

First, Mr. Landa-Arevalo argues that his conduct at trial raised a bona fide doubt about his competency.  And so, he contends, the failure to conduct a competency hearing during trial violated his procedural due process rights, requiring a new trial.

Mr. Landa-Arevalo bases this argument on several episodes.  Some of them occurred at trial; others occurred before trial.  Given the earlier discussion about the court's inability to review the trial judge's pretrial determination, the court's analysis will focus primarily on the episodes at trial.  These episodes include Mr. Landa-Arevalo's multiple outbursts during voir dire and his repeated insistence that he was not represented by counsel even though trial counsel was seated next to him.  But, as context for these trial events, the court also will consider Mr. Landa-Arevalo's pretrial conduct that, in his view, (when combined with his conduct at trial), raise a bona fide doubt about his competency during trial.  These pretrial episodes fall into three general categories:  (1) Mr. Landa-Arevalo shutting down all communications with trial counsel, *i.e.*, refusing legal visits, rejecting legal correspondence, placing his hands over his ears and physically moving away from trial counsel when trial counsel tried to speak with him; (2) Mr. Landa-Arevalo failing to process and ultimately rejecting an incredibly favorable plea deal "that no rational person in [his] circumstance would refuse," Doc. 367 at 5 (emphasis omitted); and (3) Mr. Landa-Arevalo making repeated requests for new counsel.

Start with Mr. Landa-Arevalo's conduct at trial.  In fact, start with the very first moment of voir dire:

**MS. MORGAN:**  May it please the Court, Your Honor, Melanie Morgan on behalf of Mr. Landa-Arevalo, who's present in the courtroom.

**THE DEFENDANT:**  I object to that representation, Your Honor.

**THE COURT:**  That's noted for the record.  We're starting your trial.  You've made that clear that you're objecting to Ms. Morgan representing you.

**THE DEFENDANT:**  Thank you, Your Honor.

Doc. 393 at 2.  Mr. Landa-Arevalo interrupted voir dire three more times after that, again objecting to trial counsel's representation.  *See id.* at 2–5.  At the end of voir dire, the court admonished Mr. Landa-Arevalo, at considerable length, and ordered him not to interrupt the proceedings again.  *See id.* at 8–17.

The trial began the next day.  And first thing (without the jury present), Mr. Landa-Arevalo asked the court if he could raise his hand when he wanted to say something.  The court instructed Mr. Landa-Arevalo not to do that, and directed him, instead, to confer with his trial counsel should he have anything he wanted to say.  *Id.* at 17–20.  Mr. Landa-Arevalo responded, "Me and [trial counsel], we don't have any communication for almost 29 months."  *Id.* at 20; *see also id.* at 21 (Mr. Landa-Arevalo correcting that he hadn't communicated with trial counsel in "19 months"); *id.* at 26 (Mr. Landa-Arevalo correcting again, just two days later, that he hadn't communicated with trial counsel for "about 20 months and 16 days").

After the government submitted its evidence, the court noted that Mr. Landa-Arevalo had not interrupted the trial.  *See id.* at 23 ("I want to thank you [Mr. Landa-Arevalo] for cooperating with what I told you at the beginning about not standing up or raising your hand during the trial.").  When the court asked Mr. Landa-Arevalo if he wanted to testify, Mr. Landa-Arevalo declined.  In his words, "since I don't have no defense counsel on my side, I won't be able to say

anything to anybody.  I don't have no defense.  So I just want to keep protected the Fifth

Amendment.  Thank you, Your Honor."  *Id.* at 27; *see also id.* at 27–28 (the court responding that

it "respectfully disagree[d]" with Mr. Landa-Arevalo because he "d[id] have defense counsel"

who had represented him, examined witnesses, argued, and made objections on his behalf).

Mr. Landa-Arevalo contends that his outbursts at trial required a competency hearing and

that the failure to conduct such a hearing violated his procedural due process rights.  For support,

he analogizes his behavior to the defendant's behavior in *United States v. Williams*, 113 F.3d

1155 (10th Cir. 1997).  But there, our Circuit determined that a bona fide doubt about defendant's

competency existed at trial for many reasons that don't present themselves here.  To start, on the

first day of trial, the *Williams* defendant, "speaking rapidly and excitedly, bombarded the court

with requests, asking to make an opening statement, to fire her attorney, to introduce a disputed

tape and transcript . . . , to ascertain the presence of certain witnesses, and to protest the

composition of the jury."  *Id.* at 1157.  During questioning of a government witness, the defendant

was crying, her counsel noted that she couldn't "really control herself[,]" and, eventually, the

court ordered the marshal to remove defendant from the courtroom and recessed the trial for the

day.  *Id.* at 1158 (internal quotations omitted).  And, on the final day of trial, the district court

stated for the record that "[t]he defendant is hysterical.  She is interrupting the proceedings.  She

is sobbing.  What she is saying is such that I cannot understand it and my court reporter has

indicated to me that what she is saying is not possible to place in the record."  *Id.* at 1159.  As the

Circuit put it, to say that defendant "was out of control . . . euphemizes the record."  *Id.* at 1158;

*see also id.* at 1158, 1160 (noting that defendant "told the court she did not take her [anti-

depressant] medication" on the final day of trial and emphasizing that the court should've "further

investigated when [defendant] cryptically answered the court's question about whether her taking the medication interfered with her ability to communicate with her attorney").

Mr. Landa-Arevalo's interruptions at trial don't come close to the "outbursts and hysteria" from *Williams* that "should have triggered a 'bona fide doubt' about the [defendant's] competency to stand trial." *Id.* at 1160.  While Mr. Landa-Arevalo was occasionally disruptive and interrupted proceedings more than once, the record doesn't suggest that he was out of control.  In fact, the record reflects that Mr. Landa-Arevalo briefly interrupted the trial only four times.  He didn't interrupt the questioning of a witness.  He wasn't removed from the court room.  And, as the court later noted towards the end of trial, he adhered to the court's direction and stopped interrupting the proceedings after voir dire and the first day of evidence.

Also, it appears that Mr. Landa-Arevalo's interruptions at trial were not the product of uncontrollable outbursts, raising a bona fide doubt about competency.  Instead, his interruptions were consistent with his past practice of objecting to his counsel's representation.  *Williams* itself distinguished between these two types of conduct.  There, the Circuit reasoned that the *Williams* defendant's "outbursts, interruptions of the attorneys, and defiance of the district court's instructions" didn't suggest that the defendant merely was "engaged in obstructionism during the proceedings." *Id.* at 1160.  Instead, the Circuit concluded, defendant's conduct "raise[d] a genuine, reasonable doubt about her competency to stand trial[.]" *Id.*  But here, the court concludes that Mr. Landa-Arevalo's conduct falls in the former category, *i.e.*, obstructionism.  Indeed, Mr. Landa-Arevalo's conduct in this case is closer to two later cases where the Circuit has distinguished *Williams* and rejected a defendant's procedural competency arguments.

In *United States v. Landers*, 564 F.3d 1217, 1219 (10th Cir. 2009), the defendant had exhibited a "history" of "rejecting the authority of the federal government."  During several

proceedings, he was removed from the courtroom for "odd and disruptive behavior." *Id.* at 1220. And, while represented by counsel, he "made a number of unusual pro se filings, and refused to cooperate with or assist his appointed counsel." *Id.* The Circuit concluded that "while [defendant's] courtroom behavior was disruptive, it was not hysterical or out of control" like the defendant's conduct in *Williams*. *Id.* at 1222. Instead, the Circuit explained, the *Landers* defendant had "limited his participation to scripted presentations calculated to disrupt court proceedings and to register continued protest against the federal government's authority." *Id.* On those facts, the Circuit concluded that "there was no cause to order a competency hearing." *Id.* at 1223.

Next, in *United States v. Cornejo-Sandoval*, 564 F.3d 1225 (10th Cir. 2009), our Circuit again distinguished *Williams*. In that case, defendant "was a difficult client" who was "highly suspicious of his lawyers[.]" *Id.* at 1235. Immediately before and during trial, he was fixated on a government informant who was testifying against him. Specifically, he said he wanted the informant "tried as a co-defendant," *id.* at 1228, he refused to enter the courtroom "unless the 'rat' [the informant] was present first[,]" *id.* at 1229, and he "insisted on testifying 'at the same time' as the informant, similar to the television program *Judge Judy*[,]" *id.* at 1230. Also, during one of his "tirade[s]" during trial, defendant "had stomped his feet on the floor like a child." *Id.* at 1231. Reviewing this behavior, the Circuit concluded that defendant's "tirades reflect[ed] anger and frustration, but they [we]re not incoherent" like the behavior demonstrated by the *Williams* defendant. *Id.* at 1236. And so, the Circuit held, the district court did not err in declining to conduct a competency hearing.[7] *Id.*

---

[7]     To be precise, the Circuit held that the district court didn't err by declining to conduct a *second* competency hearing in the middle of trial. The district court in *Cornejo-Sandoval* already had held a competency hearing six days before trial and found defendant competent. The district court made that finding based on a psychological evaluation and the agreement of both parties' counsel that defendant's

Mindful of these guideposts set by Circuit precedent, the court concludes that Mr. Landa-Arevalo's interruptions during voir dire and the first day of the government's evidence don't raise a bona fide doubt about his competency at trial.  Trial counsel's concerns about Mr. Landa-Arevalo's competency were reasonable in the moment, given trial counsel's past relationship with him.  But the "'concerns of counsel alone are insufficient to establish doubt of a defendant's competency.'"  *Id.* at 1235 (quoting *United States v. Mackovich*, 209 F.3d 1227, 1233 (10th Cir. 2000)).  The procedural due process clause requires district courts to hold a competency hearing when there's a bona fide doubt about a defendant's competency—or, as provided by 18 U.S.C. § 4241—when there's reasonable cause to believe a defendant isn't competent to stand trial.  But courts have not expanded those guarantees "'to require such a hearing any time that a defendant engages in disruptive tactics or pursues a frivolous legal strategy.'"  *United States v. Patterson*, 713 F.3d 1237, 1243 (10th Cir. 2013) (quoting *United States v. Banks*, 482 F.3d 733, 743 (4th Cir. 2007)).  The court thus rejects Mr. Landa-Arevalo's procedural due process argument.

### C.    Substantive Due Process Argument

Mr. Landa-Arevalo's second argument for a new trial contends he was tried while incompetent, thus violating his substantive due process rights.  *See McGregor*, 248 F.3d at 952 ("[A] substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent.").  But having rejected Mr. Landa-Arevalo's procedural due process argument, the court necessarily rejects Mr. Landa-Arevalo's substantive due process argument.  In other words, because Mr. Landa-Arevalo's conduct didn't raise a bona fide doubt about his competency,  Mr. Landa-Arevalo hasn't shown that he was tried while incompetent.  As

---

obstructive behavior was "a communication problem, not a competency problem." *Cornejo-Sandoval*, 564 F.3d at 1228.  While these circumstances resulted in the Circuit applying "a more deferential standard" of review, *id.* at 1235, than the one applied in *Williams* (where the court hadn't conducted a competency hearing), the Circuit's distinction of *Williams*'s facts nevertheless informs the court's analysis here.

our Circuit has explained, where a defendant "cannot show a bona fide doubt" about "his competency, he cannot meet the more stringent substantive due process competency standard." *Cornejo-Sandoval*, 564 F.3d at 1236 (quotation cleaned up) (concluding that "[d]efendant's failure to succeed on his procedural competency claim also forecloses [his] substantive challenge"); *see also United States v. Herrera*, 481 F.3d 1266, 1272 n.1 (10th Cir. 2007) ("Since we conclude no bona fide doubt exists that [defendant] was not incompetent at trial, he likewise fails to make a substantive due process claim.").

In any event, the court isn't persuaded that Mr. Landa-Arevalo was tried and convicted while incompetent. The court previously has addressed the open question whether a defendant or the government bears the burden on the substantive competency question. *See* Doc. 512 at 4–9. The court need not recount that discussion again, in full. Instead, the court briefly notes that the balance of authority from the Supreme Court and our Circuit favors the conclusion that defendants bear the burden to prove incompetence. *See, e.g.*, *Medina v. California*, 505 U.S. 437, 446, 453 (1992) (holding that a state law presuming defendant's competency to stand trial and imposing the burden to prove otherwise on the party asserting incompetence did not violate due process); *United States v. Smith*, 521 F.2d 374, 377 (10th Cir. 1975) (noting that defendant holds the burden to prove incompetency and concluding that defendant in a federal criminal proceeding had "failed to sustain his burden of proving his incompetency"); *United States v. Sanchez-Gonzalez*, 109 F. App'x 287, 290 (10th Cir. 2004) (explaining that "the [g]overnment may presume the defendant is competent and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence"). But, regardless of who holds the burden, the court's conclusion is the same. If Mr. Landa-Arevalo has the burden to prove incompetency, he

has failed to shoulder it.  And if the government has the burden to prove competency, it has carried it.

To be sure, "[r]etrospective determinations of an accused's competence to stand trial are, at best, problematic, and, at worst, untrustworthy." *Williams*, 113 F.3d at 1160 (citing *Pate v. Robinson*, 383 U.S. 375, 387 (1966)).  But, Mr. Landa-Arevalo's conduct allegedly demonstrating his incompetency is part and parcel of a consistent pattern that the court discerns both from the cold record and its own experience since the case was reassigned.  Throughout this case's history, Mr. Landa-Arevalo has refused to speak with his counsel.  In court, he regularly objects to counsel's representation.  He has even gone as far as saying that he doesn't have counsel when counsel is seated next to him.  This behavior, perhaps irrational, doesn't provide a reason to deem Mr. Landa-Arevalo incompetent.  As the Sixth Circuit has noted, an "*inability* to communicate with counsel might be cause for concern." *United States v. Gooch*, 595 F. App'x 524, 528 (6th Cir. 2014) (emphasis added).  But a "*decision* not to speak to one's lawyer is a defendant's prerogative, not a sign of mental incompetence." *Id.*; *see also United States v. Coleman*, 871 F.3d 470, 478 (6th Cir. 2017) (concluding that defendant's "refusal to discuss the facts of his case with [counsel] and further refusal to allow [counsel] to make arguments on his behalf, demonstrate an unwillingness to communicate, not an inability to communicate").

The court concludes that Mr. Landa-Arevalo has made a conscious choice not to speak with his several attorneys.  The trial judge reached this conclusion on the eve of trial.  *See* Doc. 521 at 29–31.  And, the undersigned has come to the same conclusion a year and a half after trial, based on a psychological evaluation of Mr. Landa-Arevalo.  *See* Doc. 512 at 12–13 (agreeing with psychologist's report that "'Mr. Landa[-Arevalo]'s lack of cooperation with the legal

system is purposeful rather than a product of mental illness or a cognitive deficit'" (quoting Doc. 480 at 9)).  Even Mr. Landa-Arevalo appears to concede that his conduct is intentional.

In a pro se filing just weeks before trial, Mr. Landa-Arevalo discussed how he had cut off communication with his trial counsel and covered his ears and physically moved away from her when she tried to speak with him because he believed she was lying to him.  *See* Doc. 291 at 15–16; *see also id.* at 18 (discussing how he returned trial counsel's mail correspondence unopened because she was attempting to send "correspondence with the assumption that we still have communication").  Had Mr. Landa-Arevalo demonstrated unusual conduct at trial—that he never had demonstrated before or after trial—the court would have great pause about relying on pretrial and posttrial competency determinations to justify its conclusion that Mr. Landa-Arevalo was competent at trial.  But, instead, Mr. Landa-Arevalo's conduct is quite consistent.  He's repeated the same conduct before trial, through trial, and to the present day.  And the court finds that his conduct is the result of conscious choice not to speak with his counsel.

The court also concludes that his conscious choice doesn't demonstrate an inability to communicate with counsel or a failure to understand the proceedings against him—the standard for substantive competency.  *Dusky*, 362 U.S. at 402.  To the contrary, Mr. Landa-Arevalo has demonstrated his understanding of the proceedings and an ability to communicate with his lawyers throughout this case.  Before trial, Mr. Landa-Arevalo filed three pro se motions alleging that prosecutors had received confidential and privileged communications between him and his trial counsel.  *See* Doc. 264 (filed a little more than a month before trial); Doc. 278 (identical motion filed again less than a month before trial); Doc. 291 (expanded motion filed about two weeks before trial).  The motions cite and quote case law, recount the factual history of the case in detail, and discuss specific court proceedings.  And, after his trial, Mr. Landa-Arevalo filed

pro se objections to the PSR, *see* Doc. 387 (filed three months after trial) and a motion for new counsel, *see* Doc. 397 (filed four months after trial).  Both filings cite and quote case law, again at length, and coherently recount the case's factual history, as well as Mr. Landa-Arevalo's relationship with several of his attorneys.

Again, the court recognizes that much of the evidence it relies on comes from before and after Mr. Landa-Arevalo's trial.  But nothing about Mr. Landa-Arevalo's conduct at trial casts doubt on his demonstrated ability before and after trial to communicate with counsel and understand the proceedings against him.  His behavior is consistent.  And so, the court isn't convinced that this behavior—demonstrated before, during, and after trial—shows that he was tried and convicted while incompetent.  For that reason, the court rejects Mr. Landa-Arevalo's substantive due process argument.

## IV.    Conclusion

In sum, the court rejects Mr. Landa-Arevalo's procedural and substantive due process arguments based on his competency.  The court thus declines to order a new trial.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Angel Landa-Arevalo's Motion for New Trial (Doc. 367) is denied.

**IT IS SO ORDERED.**

**Dated this 28th day of April, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**